IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANDY ABBETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:04-CV-01102- |
| | ) | WKW-VPM (WO) |
| BANK OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant Bank of America's Motion for Summary Judgment (Doc. # 77) and Motion to Strike (Doc. # 97) certain evidence presented by Plaintiff Andy Abbett in opposition to the summary judgment (Doc. # 86). For the reasons given below, the Motion for Summary Judgment (Doc. # 77) will be DENIED in part and GRANTED in part, and the Motion to Strike (Doc. # 97) will be DENIED.

## I. FACTS AND PROCEDURAL HISTORY

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Sandra Bruyn opened a Bank of America credit card account, ending in 8203 ("Account 8023"), prior to her marriage to Mr. Abbett in November 2001. Within a month of the wedding, the new Mrs. Abbett telephoned Bank of America to add Mr. Abbett's name to her account. The parties dispute whether Mrs. Abbett requested that Mr. Abbett be added as an authorized user or as a

contractually liable party.[1]  Bank of America added Mr. Abbett as a "co-applicant," which Bank of America contends makes him a contractually liable party.[2]

Before Mr. Abbett was added to the account, the balance on Account 8203 was $ 995.39. Mr. Abbett charged $23 to the account in December 2001.  This charge represents Mr. Abbett's only use of the account and the Abbetts' final charge.  The account became past due in January 2002 and delinquent in August 2002.  About the time Mr. Abbett commenced this litigation, Bank of America was attempting to collect $2,132.53 from Mr. Abbett.

On December 5, 2002, Mrs. Abbett called Bank of America to report her impending bankruptcy filing and requested information regarding how her husband was added to the account. The next day, Mr. Abbett called Bank of America to state that he did not sign up for the credit card and requested a copy of the credit application.  Mrs. Abbett also disputed that Mr. Abbett was a co-signer on the account on January 2, 2003, via a telephone call.

Mrs. Abbett filed for bankruptcy on May 8, 2003. Account 8203 was one of the debts that was discharged in bankruptcy.  At least once prior to filing bankruptcy, Mrs. Abbett wrote a letter to Bank of America disputing Mr. Abbett's status as a co-applicant.  After Mrs. Abbett's bankruptcy, Bank of America made attempts to collect the Account 8203 debt from Mr. Abbett.  The parties dispute the date on which Bank of America began treating Mr. Abbett as a contractually liable party, and its reasons for doing so.

---

[1]  This disputed fact alone defeats Bank of America's Motion for Summary Judgment as to several issues discussed *infra*.

[2]  Bank of America has moved to strike the Abbetts' affidavits on the grounds that certain portions are speculative, conclusory, and not based on personal knowledge.  The Motion (Doc. # 97) will be DENIED.  The portions that Bank of America cited are based on personal knowledge and are not speculative or conclusory.

2

On numerous occasions, Mrs. Abbett, Mr. Abbett, and his attorney contacted Bank of America, directly and through its collection agencies, disputing Mr. Abbett's status as co-applicant and requesting an investigation and documentation evidencing his responsibility for the debt.  Mr. Abbett did not receive the requested documentation.

As early as August 2003, Bank of America furnished information about Mr. Abbett and Account 8203 to TransUnion.  The parties dispute whether this information was false.  Notably, Mr. Abbett's August 2003 TransUnion report and September 2003 Equifax report list Account 8023 as an *individual* account.

In addition to disputing the debt with Bank of America, Mr. Abbett disputed the reporting of the debt with TransUnion beginning in mid-2003 through early 2004.  The result of each of TransUnion's investigations was "verified, no change."  In January 2004, one or more consumer reporting agencies ("CRAs")[3] notified Bank of America that Mr. Abbett disputed information provided by Bank of America.  While Bank of America verified the information that had been reported to the CRAs, there is no evidence of Bank of America's investigation upon receipt of notification.[4]

---

[3]  The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), defines "consumer reporting agency":

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

[4]  Not for want of trying.  Mr. Abbett filed a Motion to Compel discovery on this issue after repeated attempts to depose Bank of America's Rule 30(b)(6) representative to no avail.

Bank of America at first made its own efforts to collect on Account 8023.  Beginning in the fall of 2003, however, Bank of America retained a series of collection agencies to collect the balance owed on the account from Mr. Abbett.  Trauner, Cohen & Thomas, a law firm, received notification of a dispute from Mr. Abbett and, in February 2004, indicated they had requested Bank of America to investigate the dispute and they would not take further action pending the investigation.  However, another collection agency, LTD Financial Services, began attempts to collect from Mr. Abbett by the end of the month.  LTD's collection efforts were followed by Creditors Interchange in May and June 2004 and by AlliedInterstate in November 2004.  Mr. Abbett or his attorney disputed the debt with each of the collection agencies.

Mr. Abbett filed suit on November 15, 2004.  At this stage in the litigation, Bank of America is the sole remaining defendant.  In the Amended Complaint, Mr. Abbett alleges that Bank of America was negligent and wanton in the management of Account 8203 (Counts I and II), violated the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) (Count III), defamed him for representations made to debt collectors and CRAs that he is liable on the account (Counts IV and V), invaded his privacy by disseminating false credit information and attempting to collect a debt known to be not owed by him (Count VI), negligently and wantonly disseminated false credit information (Counts VII and VIII), negligently and wantonly supervised its employees with respect to the handling of credit and account information (Counts IX and X), and conspired with former co-defendants to defraud and defame him (Count XIV).

## II.  JURISDICTION AND VENUE

Because this case arises under 15 U.S.C. § 1681, *et seq.*, the Court exercises jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction

pursuant to 28 U.S.C. § 1367.  Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

### III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255

(1986).  After the nonmoving party has responded to the motion for summary judgment, the court

must grant summary judgment if there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

Bank of America has submitted a Motion for Summary Judgment and supporting

documentation.  Mr. Abbett has opposed the motion with a response brief and an evidentiary

submission, which contains certain evidence that Bank of America challenges.  The Court addresses

each of the grounds presented by Bank of America.

A.      *Private Right of Action Under the FCRA*

As a threshold matter, the Court must decide whether the FCRA provides Mr. Abbett a

private right of action.  Bank of America asserts that no private right of action exists for claims based

on the *provision of inaccurate information* by furnishers to CRAs, which is prohibited by § 1681s-

2(a).  The Court agrees with this proposition of law but disagrees that all of Mr. Abbett's claims

should be dismissed.[5]

Mr. Abbett does not assert  a claim under § 1681s-2(a).  Mr. Abbett makes only one

claim explicitly based on the FCRA.  In Count III, he alleges that Bank of America violated § 1681s-

2(b), which *prescribes certain duties* for furnishers of information to CRAs.[6]  Through § 1681n and

---

[5]  The FCRA does not provide a federal private right of action under §1681s-2(a).  *See* § 1681s-2(c)(1) (" .
. . sections 1681n and 1681o of this title do not apply to any violation of– (1) subsection (a) of this section, including
any regulations issued thereunder . . .").  Courts have routinely held that § 1681s-2(a) may be enforced only by the
government as provided in the statute even though it creates an affirmative obligation to refrain from reporting
inaccurate information.  *See, e.g., Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003).  As stated
above, the Court agrees with Bank of America that Mr. Abbett cannot maintain a claim under § 1681s-2(a).

[6]  Bank of America concedes that it is a "furnisher of information" for purposes of the FCRA.

§ 1681o, the FCRA provides a private right of action for such violations. *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

To prevail on a § 1681s-2(b) claim, Mr. Abbett must show that a CRA notified the furnisher of information about the consumer's dispute pursuant to § 1681i(a)(2).  This notice triggers the furnisher's duties under §1681s-2(b).  The furnisher must then, within 30 days, conduct a reasonable investigation, review information provided by the CRA, report back to the CRA regarding the investigation, and take other action if information is found to be inaccurate, incomplete, or cannot be verified.  15 U.S.C. § 1681s-2(b).  This is the gist of Mr. Abbett's claim: "Whether Bank of America's investigation (if any) complied with FCRA . . . .  At issue here is Bank of America's position that these requirements do not apply."  Doc. # 86, at 16.

Bank of America did not challenge Mr. Abbett's evidence of his § 1681s-2(b) claim until its reply brief: "Plaintiff has presented no evidence whatsoever regarding either the content of any dispute which Bank of America received from a CRA, the details of any investigation which Bank of America conducted after receiving notice of a dispute from a CRA, or, perhaps more important, that Bank of America's credit reporting regarding Plaintiff was inaccurate in any way."  Doc. # 96, at 10.  The latter argument is unpersuasive because the issue of whether Bank of America's reporting was accurate is not only in dispute, but for purposes of § 1681s-2(b), it is also irrelevant.[7]  Section 1681s-2(b) duties exist regardless of whether the disputed information is later determined to be accurate.  A substantive investigation is required irrespective of accuracy.

---

[7] Bank of America's reliance on *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991), is misplaced.  The plaintiff in *Cahlin* brought suit against a CRA for a violation of § 1681e, which consists of different elements than a cause of action for a violation of § 1681s-2(b).

The remainder of Bank of America's argument is disingenuous in light of the ongoing discovery dispute between the parties.[8]  Notwithstanding the fact that discovery is not complete, there is some evidence of notice and investigation.  Bank of America's own Account Notes show that on at least two occasions in January 2004 Bank of America received "ACDVs," which Bank of America's supporting documentation on the Motion to Compel briefing defines as "automated consumer dispute verifications" submitted to Bank of America by various CRAs.  Bank of America's own documents also hint at what steps its associates would have taken upon receipt of an ACDV.

The Court finds that Mr. Abbett has presented sufficient evidence of specific facts showing that there is a genuine issue for trial; that is, what actions were taken by Bank of America in order to verify its reports to the CRAs upon receipt of notification of Mr. Abbett's dispute and whether such actions were in compliance with the FCRA.  *See, e.g., Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004) (holding that whether the furnisher of information conducted a reasonable investigation of the consumer's dispute is a question of fact for the jury).

Bank of America also argues that Mr. Abbett has no state law private right of action based on the provision of inaccurate information by furnishers to CRAs, which is prohibited by § 1681s-2(a).  The Court agrees that, insofar as  Mr. Abbett's state law claims are for violations of duties established by § 1681s-2(a), those claims must be dismissed.  Bank of America relies on § 1681s-2(c)(1) for support of this proposition; however, the Court finds that the dismissal is required under the following preemption analysis.

---

[8]  The Court is aware of Mr. Abbett's Motion to Compel with respect to discovery on the issues of notice and investigation, including the completion of a Rule 30(b)(6) deposition.  The Court is also aware of the Magistrate Judge's oral statements that she will grant leave to refile the Motion to Compel pending the outcome of the summary judgment motion.

B.       *Preemption of State Law Claims by the FCRA*

Bank of America argues that Mr. Abbett's state law claims, which, it alleges, arise from supposedly inaccurate credit reporting (i.e., Counts Five through Ten), are preempted by § 1681t of the FCRA and must be dismissed.  Bank of America argues that the language of § 1681t requires preemption of all state laws, statutory and the common law, related to furnishers of information to CRAs.[9]  Mr. Abbett opposes Bank of America's interpretation of the preemption provision and suggests the statute only preempts state statutory laws.[10]

This argument requires the Court to engage in statutory construction.  Where a statute contains an express preemption clause, the Court first focuses "on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 62-63 (2002) (quoting *CSX Transp., Inc. v. Eastwood*, 507 U.S. 658, 664 (1993))  The FCRA contains express preemption provisions:

> (a) In general
>
> Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of

---

[9]  To the extent that Bank of America advances an argument for implied field preemption ("Congress added § 624(b)(1) to achieve even broader 'field' preemption . . ."), the Court rejects this argument. The statutes at issue provide a "reliable indicium of congressional intent" to preempt state laws; there is no reason to infer a broader preemption.  *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995) (internal citations and quotations omitted). The language of § 1681t(a) refutes Bank of America's "argument that in enacting the Fair Credit Reporting Act Congress intended to preempt the field." *See Credit Data of Arizona, Inc. v. State of Arizona*, 602 F.2d 195, 197 (9th Cir. 1979); *see also Davenport v. Farmers Ins. Group*, 378 F.3d 839, 842-42 (8th Cir. 2004).  Moreover, § 1681t(b)(1)(F)(i),(ii) excepts certain state statutes from the preemption.  This means that furnishers of information must comply with those state statutes.  Therefore, Congress clearly intended compliance, albeit somewhat limited, with state laws.

[10]  To the Court's knowledge, many district courts but no appellate courts have analyzed this preemption issue. Although aware of the three approaches that courts take to determine the extent and scope of FCRA preemption, *see Barnhill v. Bank of America, N.A.*, 378 F. Supp. 2d 696, 699-704 (D.S.C. 2005) (analyzing the three recognized preemption approaches), the Court declines to adopt any of those approaches.

any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, *except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency*.

(b) General exceptions

No requirement or prohibition may be imposed under the laws of any State–
. . .
(1) with respect to any subject matter regulated under–
. . .
(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply–
(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
(ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996);
. . . .

15 U.S.C. § 1681t (emphasis added).

With respect to the instant case, this section mandates Bank of America's compliance with state laws with two exceptions:  (1) where state laws are inconsistent with the FCRA; and (2) where a State has imposed a requirement or prohibition on furnishers of information to CRAs.[11]

The parties would have the Court engage in a more involved preemption analysis,  make a determination as to whether Congress intended to preempt state common law as well as state statutory law, and reconcile the seeming conflict among the sections within the FCRA.  But, such analysis is wholly unnecessary.  From the plain language of the statute, Congress unquestionably intended for no claims to be brought against furnishers of information for making inaccurate reports to CRAs except for those brought by the government.  Allowing any private state law action to

---

[11]    This exception does not apply to the two statutes specifically named in the statute.

10

proceed against a furnisher of information based on violations of duties established by § 1681s-2(a) is inconsistent with the FCRA.  Accordingly, Mr. Abbett's state law claims, to the extent that they seek to establish liability for violations of duties established by § 1681s-2(a), are preempted by the FCRA and will be DISMISSED.  The claims to be dismissed include Counts V, VII, and VIII, as well as Counts VI, IX, X, and XIV to the extent they are based on the dissemination of false credit information.

C.      *Preemption of All Claims by Equal Credit Opportunity Act*

Bank of America asserts that the regulations promulgated under the Equal Credit Opportunity Act ("ECOA") required Bank of America to engage in the precise conduct about which Mr. Abbett complains.[12]  Bank of America claims that 12 C.F.R. § 202.10(a)(1) and its official commentary required it to report Mr. Abbett's participation in the account and that it was not required to

---

[12]  The ECOA outlaws irrational credit discrimination based on, among other things, marital status. 15 U.S.C. § 1691(a).  Congress authorized the Board of Governors of the Federal Reserve System to prescribe regulations to carry out the purposes of the Act.  15 U.S.C. § 1691b.  The Board promulgated the regulations codified at 12 C.F.R. § 201.1, *et seq*. ("Regulation B").  Regulation B provides, in relevant part:

> (a) Designation of accounts. A creditor that furnishes credit information shall designate:
> (1) Any new account to reflect the participation of both spouses if the applicant's spouse is permitted to use or is contractually liable on the account (other than as a guarantor, surety, endorser, or similar party); and
> (2) Any existing account to reflect such participation, within 90 days after receiving a written request to do so from one of the spouses.
> (b) Routine reports to consumer reporting agency. If a creditor furnishes credit information to a consumer reporting agency concerning an account designated to reflect the participation of both spouses, the creditor shall furnish the information in a manner that will enable the agency to provide access to the information in the name of each spouse.
> (c) Reporting in response to inquiry. If a creditor furnishes credit information in response to an inquiry, concerning an account designated to reflect the participation of both spouses, the creditor shall furnish the information in the name of the spouse about whom the information is requested.

12 C.F.R. § 202.10.

"distinguish between accounts on which the spouse is an authorized user and accounts on which the spouse is a contractually liable party."  12 C.F.R. Pt. 202, Supp. I, § 202.10(a).[13]  According to Bank of America, even if Mr. Abbett were only an authorized user on Account 8023, reporting his participation in the account was required by law; thus, all reporting was per se accurate as a matter of law.  Bank of America concludes that because its reporting was accurate as a matter of law, Mr. Abbett's lawsuit is preempted by ECOA.

Bank of America's argument is not well taken for several reasons.

---

[13]  Official Staff Commentary to Regulation B offers further guidance on the regulation of furnishers of credit information:

Section 202.10--Furnishing of Credit Information

1. Scope. The requirements of § 202.10 for designating and reporting credit information apply only to consumer credit transactions. Moreover, they apply only to creditors that opt to furnish credit information to credit bureaus or to other creditors; there is no requirement that a creditor furnish credit information on its accounts.

2. Reporting on all accounts. The requirements of § 202.10 apply only to accounts held or used by spouses. However, a creditor has the option to designate all joint accounts (or all accounts with an authorized user) to reflect the participation of both parties, whether or not the accounts are held by persons married to each other.

3. Designating accounts. In designating accounts and reporting credit information, a creditor need not distinguish between accounts on which the spouse is an authorized user and accounts on which the spouse is a contractually liable party.

4. File and index systems. The regulation does not require the creation or maintenance of separate files in the name of each participant on a joint or user account, or require any other particular system of recordkeeping or indexing. It requires only that a creditor be able to report information in the name of each spouse on accounts covered by § 202.10. Thus, if a creditor receives a credit inquiry about the wife, it should be able to locate her credit file without asking the husband's name.

10(a) Designation of accounts.

1. New parties. When new parties who are spouses undertake a legal obligation on an account, as in the case of a mortgage loan assumption, the creditor must change the designation on the account to reflect the new parties and must furnish subsequent credit information on the account in the new names.

2. Request to change designation of account. A request to change the manner in which information concerning an account is furnished does not alter the legal liability of either spouse on the account and does not require a creditor to change the name in which the account is maintained.

12 C.F.R. Pt. 202, Supp. I, § 202.10.

12

First, the success of Bank of America's argument is contingent on its framing of the issue and the assumption that it asks this Court to make: that the basis for all of Mr. Abbett's claims is that Bank of America's reporting of him was inaccurate solely because he is merely an authorized user. The argument fails because the plain language of the Complaint, as well as the evidence submitted in opposition to summary judgment, shows other bases for his claims.  In any event, none of the remaining claims relate to reporting to CRAs.

Second, the Court is unaware of, nor has Bank of America offered up,[14] any authority supporting the proposition that the regulations promulgated by a federal agency under one federal act (ECOA) could "preempt" the entire legislative scheme under another federal act (FCRA).  This Court assumes, without deciding, that a regulation that conflicts with a statute under which it was not promulgated is invalid or, at the very least, must yield to the statute.

Moreover, the Board has recognized, albeit in the context of disclosures, that the ECOA and the FCRA impose different requirements on creditors and that the requirements of the both of the Acts must be met.  *See* 12 C.F.R. Pt. 202, Supp. I § 202.4, paragraph 9(b)(2).[15]  This Court cannot

---

[14]  Bank of America's reliance on *Melwani v. First USA Bank, N.A.*, Nos. 03-7806, 03-7807, 03-7813, 2004 WL 902320 (2d Cir. Apr. 28, 2004), and *Moline v. Experian Info. Sys.*, 289 F. Supp. 2d 956 (N. D. Ill 2003), is misplaced.  *Moline* is not dispositive of this issue as it does not relate to the ECOA or the provision of the FCRA under which Mr. Abbett sues.  *Melwani* is an unpublished, three-paragraph summary decision from a different circuit without a recitation of the facts or any meaningful analysis of a case brought by a *pro se* litigant.  Thus, it has no precedential value.

[15]  The Official Commentary to Regulation B states:

> Combined ECOA-FCRA disclosures. The ECOA requires disclosure of the principal reasons for denying or taking other adverse action on an application for an extension of credit. The Fair Credit Reporting Act (FCRA) requires a creditor to disclose when it has based its decision in whole or in part on information from a source other than the applicant or its own files. Disclosing that a credit report was obtained and used in the denial of the application, as the FCRA requires, does not satisfy the ECOA requirement to disclose specific reasons. For example, if the applicant's credit history reveals delinquent credit obligations and the application

ignore the plain language of the FCRA or place a higher value on one statute over another.  Taking the action that Bank of America requests would not satisfy the purposes of either the ECOA or the FCRA.  Whatever tension exists between the statutes and their regulations must be resolved by Congress and not this Court.

Third, ECOA and Regulation B do not preempt Mr. Abbett's state law claims.  ECOA provides for federal preemption only if  "the laws of any State with respect to credit discrimination" are inconsistent with ECOA, and then only to the extent of the inconsistency.  15 U.S.C. § 1691d. Regulation B outlines ways in which a state law could be inconsistent with ECOA; however, the provisions cited by Bank of America are inapplicable here.  *See* 12 C.F.R. 202.11(b).  Furthermore, the Board, which has statutory authority to make determinations of inconsistency, *see* § 1691d(f), has not done so with respect to either state common law or state fair credit reporting laws.  *See* 12 C.F.R. Pt. 202, Supp. I, § 202.11(a).  The Board has made only two preemption determinations of certain provisions of state credit discrimination statutes.  *Id.*  Neither apply here.

Accordingly, the Court finds that Regulation B does not preempt Mr. Abbett's FCRA claim and claims under state law.

D.     *Qualified Immunity Under § 1681h*

Bank of America claims that in the absence of preemption, it is entitled to qualified immunity under § 1681h(e) of the FCRA:

---

is denied for that reason, to satisfy § 202.9(b)(2) the creditor must disclose that the application was denied because of the applicant's delinquent credit obligations. To satisfy the FCRA requirement, the creditor must also disclose that a credit report was obtained and used in the denial of the application. Sample forms C-1 through C-5 of Appendix C of the regulation provide for the two disclosures.

12 C.F.R. Pt. 202, Supp. I § 202.4, paragraph 9(b)(2).

14

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence *with respect to the reporting of information* against any . . . person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added).  Bank of America reasons that Mr. Abbett's state law claims should be dismissed because he cannot prove that it reported false information or acted with malice or willful intent to injure.  These arguments fail because § 1681h(e) is inapplicable to Mr. Abbett's remaining claims.  Mr. Abbett's remaining claims are based on Bank of America's management of Account 8023, its attempts to collect the debt, and disclosing information to its hired collection agencies.  Because the information on which these claims are based was not reported pursuant to the FCRA provisions, § 1681h is not implicated here.

E.      *Doctrines of Ratification, Affirmance, and Account Stated*

Bank of America argues that the doctrines of ratification, affirmance, and account stated bar all of Mr. Abbett's claims.  Bank of America reasons that not only is there substantial evidence that Mr. Abbett is a co-applicant on Account 8023, but that Mr. Abbett has also become a contractually liable party because he has treated the indebtedness as his own obligation to pay.  The Court rejects this argument as a basis for summary judgment.

Ratification is an agency concept by which a principal, who has full knowledge of the unauthorized acts of his agent, affirms those acts as if originally authorized by him.  *See* Restatement (Second) of Agency § 82 (1958).  Issues of agency and affirmance are questions for the jury and Bank of America bears the burden of proving its affirmative defense.

15

Even if "substantial evidence" exists, it is not the standard by which summary judgment in federal courts is determined.  Mr. Abbett has presented evidence that both he and his wife treated him as nothing more than an authorized user and that they then took appropriate action upon discovering Bank of America's intention to hold him contractually liable.  This evidence is sufficient to create a factual dispute precluding summary judgment on this argument.  This reasoning equally applies to Bank of America's "account stated" argument.

F.      *Remaining State Law Claims*

Bank of America challenges all of Mr. Abbett's state law claims for failure to state a cause of action as a matter of law.  Bank of America claims Mr. Abbett cannot prove that Bank of America furnished inaccurate credit information about him, which is an essential element of all of his state law claims.  Because there are genuine issues of material fact that must be resolved by the trier of fact as to the accuracy of the information reported about Mr. Abbett, this argument fails.

Bank of America further challenges two claims and makes specific arguments.  First, it is argued that Mr. Abbett has no cause of action for conspiracy because he cannot support his underlying claims.  In light of the Court's ruling that there are genuine issues of material fact regarding the underlying causes of action, this argument fails at this time.

Second, Bank of America contends that its communications with its hired collection agencies are not "publications" for the purposes of establishing a defamation claim.  *See Robinson v. Equifax Info. Services, LLC*, No. Civ. A. CV 040229 RP, 2005 WL 1712479 at *13  (S.D. Ala. July 22, 2005) (citing *Brackin v. Trimmier Law Firm*, 897 So.2d 207, 222 (Ala. 2004)). In *Brackin*,  the Alabama Supreme Court held that a credit union through its employees did not publish to a third party a false and defamatory statement about a former credit union executive because the employees were acting

16

within the line and scope of their employment when they responded to an auditor's question. *Brackin*, 897 So.2d at 221-22. Similarly, the auditor's questions fell within the line and scope of her agency for the credit union, and the extent of the communications regarding the investigation did not exceed what was reasonably necessary. *Id.* at 222. The court's analysis contemplated the facts of the auditor's engagement and investigation in order to determine the line and scope of her agency with the credit union. *See id.* at 222. Unlike the defendants in *Brackin*, Bank of America does not set forth any facts to support the non-publication argument and states only that "any communication by Bank of America to its agents or employees, including the Debt Collector Defendants, in the course of business regarding the collection of the account from Plaintiff is not a 'publication' . . . ." Thus, Bank of America has not met its initial burden of demonstrating no genuine issue of material fact, and summary judgment cannot be granted. *Celotex Corp.*, 477 U.S. at 322-23.

## V. CONCLUSION

Construing all facts presented in the light most favorable to the non-movant, the Court finds that Mr. Abbett has adequately demonstrated that a genuine issue of material fact exists with regard to some claims.

Therefore, it is ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 77) is DENIED in part and GRANTED in part. The following claims, which seek to establish liability for violations of duties established by § 1681s-2(a), are preempted by the FCRA and are thus DISMISSED: Count V, defamation for false statements to CRAs; and Counts VII and VIII, negligent and wanton dissemination of false credit information. To the extent the claims are based on the dissemination of false credit information to CRAs, the following claims are also DISMISSED:

17

Count VI, invasion of privacy; Counts IX and X, negligent and wanton supervision; and Count XIV, conspiracy.

The remaining claims include Counts I and II, negligence or wantonness in the management of Account 8023; Count III, a FCRA claim for violations of duties established by § 1681s-2(b); and Count IV, defamation for false statements to debt collectors.  To the extent the claims are based on the management of the account or attempts to collect the debt, the following claims also remain: Count VI, invasion of privacy; Counts IX and X, negligent and wanton supervision; and Count XIV, conspiracy.

It is further ORDERED that Defendant's Motion to Strike (Doc. # 97) is DENIED.

DONE this the 8th day of March, 2006.

/s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE